UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| 1100 West, LLC, ) | |
| ) | |
|   Plaintiff/Counterdefendant, ) | |
| ) | |
|     vs. ) | CAUSE NO.  1:05-cv-1670-LJM-WTL |
| ) | |
| RED SPOT PAINT AND VARNISH CO., INC., ) | |
| ) | |
|   Defendant/Counterclaimant. ) | |

### ENTRY ON MOTIONS FOR PROTECTIVE ORDER

This cause is before the Magistrate Judge on Plaintiff's Motion for Protective Order (docket no. 190) and the Defendant's Motion for Protective Order(docket no. 192).  Both motions are fully briefed, and the Magistrate Judge, being duly advised, resolves the motions as set forth below.

### Plaintiff's Motion for Protective Order

In its motion, the Plaintiff objects to and seeks to quash the Defendant's subpoena issued to Gary Dunn, a private investigator hired by Plaintiff's counsel to assist them in this case.  The subpoena essentially seeks all documents that Mr. Dunn has that are relevant to the subject matter at issue in this case, including the following:

    1.    All documents relating to the preparation of the affidavit of Timothy Stubbs,[1] including all notes made by Mr. Dunn during any meeting with Mr. Stubbs;

    2.    All drafts and versions of the Stubbs affidavit;

    3.    All affidavits that Mr. Dunn "pursued, prepared and/or obtained" for the Plaintiff,

---

[1] Mr. Stubbs is a non-party who apparently has knowledge regarding some of the issues in this case because he did plumbing and other work for the Defendant over the course of many years.  He was interviewed by Mr. Dunn on several occasions and executed an affidavit that was drafted by Mr. Dunn; he also has been deposed by the Defendant.

        its lawyers, or its principals;

4.     All affidavits and other documents concerning or relating to several broad topics relevant to this case.

At first blush, the subpoena appears patently improper; it would be improper to subpoena counsel's litigation files, and it is equally improper to subpoena counsel's investigator's files which is, in essence, what the Defendant has done.   None of the Defendant's arguments persuade the Magistrate Judge that this first impression is incorrect.

     The Defendant  first argues that Mr. Dunn likely has documents that are not privileged. That is almost certainly correct; in any case, both counsel and their investigator will have documents in their files that they did not create.  For example, in a case involving an automobile accident, the files likely would contain accident reports from the responding officers as well as other documents that clearly are not covered by any privilege.  Such documents certainly would be discoverable–in response to a document request seeking all accident reports, for example–but that does not make it appropriate to subpoena all documents in the files, with the expectation that counsel and the investigator would produce the non-privileged documents and identify all privileged documents on a privilege log (which would be subject to constant supplementation as documents were added to the file during the course of litigation).  This case is no exception. Presumably the Defendant has served document requests seeking the full gamut of relevant documents in this case, and presumably the Plaintiff has produced those documents to the extent they are not privileged.  However, the Defendant is not entitled to know that whether a particular non-privileged document ended up in Mr. Dunn's files, and the Plaintiff is not required to prepare a privilege log listing the privileged documents in Mr. Dunn's files, no more so than the Defendant was required to prepare a privilege log listing all of the notes in its counsel's files.

Next, the Defendant argues that documents reflecting statements made by third parties to Mr. Dunn are not privileged. While it is true that such statements are not protected by the attorney client privilege, documents created by Mr. Dunn (or any other agent of Plaintiff or its counsel) during the course of this litigation that reflect which potential witnesses Mr. Dunn has interviewed, the questions he chose to ask them, and his notes regarding their answers are classic work product; so, too, are the affidavits that Mr. Dunn drafted summarizing his understanding of the witnesses' statements. It is frankly perplexing that the Defendant would suggest otherwise.

The Defendant next argues that to the extent that a particular document was privileged, the privilege was waived if Mr. Dunn showed it to a third party. However, unlike the attorney-client privilege, "disclosure of a document to third persons does not waive the work-product immunity unless it has substantially increased the opportunities for potential adversaries to obtain the information." *BASF Aktiengesellschaft v. Reilly Indus., Inc.*, 224 F.R.D. 438, 442 (S.D. Ind. 2004) (citations omitted). This is because one of the purposes of the work product privilege is to prevent a litigation "from taking a free ride on the research and thinking of his opponent's lawyer." *Hobley v. Burge*, 433 F.3d 946, 949 (7th Cir. 2006) (citation omitted). If the Defendant wants to know what a potential witness knows, or what his or her testimony would be if deposed or called at trial, defense counsel (or their investigator) can conduct their own interview and obtain their own affidavit; they are not entitled to ride upon the coattails of Plaintiff's counsel.[2]

---

[2]Indeed, one need look no further than Federal Rule of Civil Procedure 26(b)(3) to confirm that a witness's statement does not lose its status as work product simply because the witness was shown the statement (or asked to read and sign it). The first paragraph of that rule sets forth the showing that must be made by a party seeking to obtain work product from its opponent; the second paragraph then provides that a party or other person may obtain *without the required showing* a statement previously made by that party or person, and defines a "statement"

3

Finally, the Defendant argues that it has substantial need for the documents at issue and therefore is entitled to discover them pursuant to Rule 26(b)(3) (work product discoverable "only upon a showing that the party seeking the discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means").  The Defendant believes that Mr. Stubbs' deposition testimony conflicts with and/or calls into question the information in his affidavit, and argues that

> the circumstances surrounding the creation of his affidavit, particularly the fact he played no role in creating the affidavit, combined with his admissions that portions of the affidavit were incorrect or not within his personal knowledge, indicates that there may be additional evidence in possession of Mr. Dunn that would go toward Mr. Stubbs' credibility as a witness and the credibility of his affidavit. Red Spot seeks the drafts of Mr. Stubbs' affidavit as well as the notes from Mr. Dunn' s interviews because they may bear on both issues.

This argument is without merit.   As the Supreme Court noted in *Hickman v. Taylor*, 329 U.S. 495, 512-13 (1947),  the seminal work product privilege case:

> Under ordinary conditions, forcing an attorney to repeat or write out all that witnesses have told him and to deliver the account to his adversary gives rise to grave dangers of inaccuracy and untrustworthiness. No legitimate purpose is served by such production. The practice forces the attorney to testify as to what he remembers or what he saw fit to write down regarding witnesses' remarks. Such testimony could not qualify as evidence; and to use it for impeachment or corroborative purposes would make the attorney much less an officer of the court and much more an ordinary witness. The standards of the profession would thereby suffer.

This is no less true when applied to an investigator hired by and working directly for counsel. As another court more recently noted, "if the desire to impeach a witness with prior inconsistent

---

as, inter alia, a written statement signed by the person who made it.  If the work product privilege was waived simply by showing the statement to the person who made it, there would be no need for the second paragraph at all, because no privilege would protect such statements and they would be fully discoverable.

statements is a sufficient showing of substantial need, the work product privilege would cease to exist; there is not a lawyer born who would not like to see opposing counsel's files in order to search for inconsistencies in opposing witnesses' potential testimony." *McPeek v. Ashcroft*, 202 F.R.D. 332, 339 (D.D.C. 2001).

It was no more appropriate for the Defendant to subpoena the files of Mr. Dunn than it would have been for them to subpoena the litigation files of Plaintiff's counsel.  Neither is it appropriate for the Defendant to depose Mr. Dunn regarding his investigation work for Plaintiff's counsel.  Accordingly, the Plaintiff's motion for protective order is **GRANTED**.

Defendant's Motion for Protective Order

In its motion for protective order, the Defendant objects to the Plaintiff's Rule 30(b)(6) deposition notice ("the Notice") on several grounds.  First, the Defendant argues that the Notice fails to satisfy Rule 30(b)(6)'s requirement that the party serving the notice "designate with reasonable particularity the matters on which examination is requested."  Subject 1 of the Notice seeks the following:

> The project(s) undertaken at Red Spot's Evansville facility, in the late 1980's or early 1990's, involving any excavation or trench(es) or other areas, whether or not associated with the underground piping, in geographic areas between Tank Farm #2, and the Lacquer Building or otherwise within the general area of Tank Farm #2, including but not limited to the following:
>
> > (a) the taking of any solid or liquid samples;
> > (b) the results of any such samples;
> > (c) the condition of the excavated soil;
> > (d) the treatment and disposal of any excavated soils;
> > (e) the disposal of the underground piping;
> > (f) work performed by any contractors on the project.

The Defendant argues that the word "projects" is vague, ambiguous, and overly broad.  Maybe so; however the Notice qualifies "projects" with a fairly detailed description of the type of

"projects" to which it refers.  There is nothing objectionable in Topic 1.

The Defendant next (somewhat contradictorily) argues that it "assumes" that the Plaintiff is referring to one specific project and that–with the exception of six invoices it has produced–it has no knowledge or documents relating to that project because the relevant documents were purged long ago pursuant to its document retention program and none of its current employees have any relevant knowledge regarding most of the questions the Plaintiff is likely to ask because the work in question was performed by outside contractors.  The Defendant is correct that it is not required to seek out information from third parties in order to prepare itself for a deposition that will be binding upon it.  However, the fact that the Defendant's answer might legitimately be "I do not know and I have no reasonable way of finding out" does not make the question improper.

Topic 2 is another matter.  Essentially, Topic 2 encompasses all of the documents the Defendant produced in response to the Plaintiff's Sixth Request for Production of Documents, which relates to the Defendant's Westland facility.  The Plaintiff was unable to be more specific at the time the Notice was served because it had not yet received the documents; now that it has, it agrees to amend the Notice to set forth in more detail what topics it intends to address.  The Defendant argues that the Plaintiff must be required to list, by Bates number, the documents it plans to cover during the deposition , because if not "the request will still be so over broad that it will be impossible for Red Spot to conceivably comply with its obligations to designate and prepare the appropriate witnesses to testify on behalf of the corporation about thousands of pages of undescribed, undesignated documents and the events described in those thousands of pages of undescribed, undesignated documents."  The Magistrate Judge disagrees that the only acceptable revision of Topic 2 would be for the Plaintiff to list specific documents by Bates numbers.

However, the Magistrate Judge does admonish the Plaintiff that its amended Topic 2 should be consistent with the limits suggested in Chief Judge McKinney's order of March 14th allowing for a limited amount of discovery regarding the Westland facility.

The Defendant's motion raises two additional issues. First, the Defendant objects to the place listed in the Notice; it appears counsel have resolved that issue among themselves. Finally, the Defendant points out in its motion that the Plaintiff has already conducted three Rule 30(b)(6) depositions that combined have lasted in excess of 15 hours. Inasmuch as the Defendant does not seek any relief relating to this issue, it is unclear to the Magistrate Judge why it is mentioned in the motion.

For the reasons set forth above, the Defendant's motion for protective order is **DENIED**.

SO ORDERED:   05/18/2007

_William T Lawrence_

Hon. William T. Lawrence, Magistrate Judge
United States District Court
Southern District of Indiana


Copies to all counsel of record via electronic notification