UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| 1100 WEST, LLC, | ) | |
|     Plaintiff/Counterdefendant, | ) | |
| | ) | |
| vs. | ) | 1:05-cv-1670-LJM-JMS |
| | ) | |
| RED SPOT PAINT AND VARNISH CO., | ) | |
| INC., | ) | |
|     Defendant/Counter Plaintiff. | ) | |


## ORDER ON PLAINTIFF'S MOTION TO COMPEL

This cause is now before the Court on plaintiff/counterdefendant's, 1100 West, LLC,

Motion to Compel responses by defendant/counter plaintiff's, Red Spot Paint & Varnish

Co., Inc. ("Red Spot"), and its counsel, Bose McKinney & Evans LLP ("BME"), to questions

about communications between the two, or among lawyers at BME, regarding documents

withheld in discovery.  In essence, 1100 West seeks waiver of the attorney-client and work-

product privileges on the basis of what 1100 West considers fraudulent conduct by Red

Spot and BME to conceal evidence of the presence of trichloroethylene ("TCE") and/or

percholoroethylene ("PCE") at Red Spot.  Red Spot opposes the breadth of 1000 West's

request for waiver; BME defers to Red Spot as to the scope of any attorney-client privilege

waiver, and asserts that the Court should put principled limits on the waiver of information

covered by the work-product privilege.

For the reasons stated herein, the Court GRANTS/DENIES 1100 West's Motion to

Compel.

## I.  <u>BACKGROUND</u>

This dispute arose as a result of 1100 West's review of a certified copy it had obtained of Red Spot's Environmental Protection Agency ("EPA") file approximately ten days before a trial on the merits was set to begin.  The EPA file contained certain references to the presence of TCE on Red Spot's property, and certain references to spills of contaminated liquid on Red Spot's property.  The presence of TCE and any connection to spills of contaminants that might contain TCE is highly relevant to a contested issue in the case:  who is responsible for the TCE plume on 1100 West's property.

The Court held two on-the-record conversations with counsel for 1100 West and BME regarding the EPA file, 1100 West's discovery of the relevant withheld documents, and BME's handling of the EPA file it received from the EPA in August 2007.

Based on the belated discovery of the documents, the Court continued the trial.  In addition, 1100 West filed a Motion for Sanctions.  In its Motion for Sanctions, 1100 West alleges that both Red Spot and BME should be held responsible for the non-production of the EPA file documents.  In essence, 1100 West argues that BME is responsible because it received the documents, reviewed the documents, and did not cause them to be produced to 1100 West even though they were responsive to several outstanding discovery requests.  1100 West also argues that Red Spot should be held responsible for the non-disclosure of the documents because they were relevant to the topics discussed at Red Spot's Federal Rule of Civil Procedure 30(b)(6) ("Rule 30(b)(6)") witness' deposition.  In both instances, the paper discovery responses and at the Rule 30(b)(6) deposition, Red Spot told 1100 West that there was never any TCE used or spilled on Red

Spot's property.  In fact, this response assertion repeated by Red Spot in several briefs before this Court.

Due to the nature of the allegations in 1100 West's Motion for Sanctions, Red Spot requested additional time to respond to the Motion for Sanctions.  In part, Red Spot argued that its request would allow both Red Spot and BME to explore the potential conflicts of interest that might arise in defending against 1100 West's allegations.  In other part, Red Spot argued that the breadth of 1100 West's requests for additional discovery related to the non-disclosure of the EPA file would not allow Red Spot to assimilate that discovery before time had expired for it to respond to 1100 West's Motion for Sanctions.  In addition, Red Spot also informed the Court that it would retain different counsel to defend the Motion for Sanctions and that BME would respond separately to that motion.

On November 13, 2008, the Court issued an order in which it agreed to the extension of time.  In addition, the Court concluded that the discovery regarding the EPA file and further merits discovery were so intertwined that Red Spot should be represented by new counsel as to all further discovery, sanctions based or not.  The Court also, *sua sponte*, granted 1100 West permission to supplement its Motion for Sanctions after that discovery was complete.

In December 2008, discovery by 1100 West at Red Spot revealed an additional 70,000 responsive, but undisclosed, documents ("Newly Discovered Responsive Documents"[1]).  As of the date of this Order, in addition to the critical documents contained in the EPA file, 1100 West has discovered at least eight more critical references to the

---

[1]The Court notes that the Newly Discovered Responsive Documents include those found in the EPA file.

presence of TCE or PCE, a precursor to TCE, on Red Spot's property during the relevant time frame.  1100 West alleges that these documents show the presence and use of TCE and/or PCE in Red Spot's raw materials, end products, process operations and hazardous wastes, in a large enough quantity to have caused the TCE plume on 1100 West's site. Having made these discoveries, 1100 West wants to investigate why these documents were never produced during discovery and who is responsible for the non-production.

The instant Motion was filed after the parties could not reach an agreement during the deposition of BME attorney Matthew Klein ("Klein") about the scope of any privilege waiver that has occurred as the result of Red Spot's failure to produce documents and/or as the result of the two on-the-record conferences about the EPA file.

## II.  DISCUSSION

In the instant Motion, 1100 West contends that the attorney-client and work-product privileges with respect to all of the Newly Discovered Responsive Documents has been waived.  Therefore, 1100 West seeks an order that would compel Red Spot and BME to provide full and complete responses to deposition questions about the following subjects:

      1.    Communications concerning the sum and substance of the Newly Discovered Responsive Documents, to wit:

      a.    the presence of TCE and/or PCE in Red Spot processes or waste streams as depicted in the Newly Discovered Responsive Documents;

      b.    leaks and releases of hazardous wastes into the environment as depicted in the Newly Discovered Responsive Documents;

> > c.   history of alleged violations of environmental regulations as depicted in the Newly Discovered Responsive Documents.

> 2.   Communications within BME or within Red Spot (or between the two) regarding production or non-production of all or any portion of the Newly Discovered Responsive Documents to 1100 West.

> 3.   Facts or communications within Red Spot or between Red Spot and BME concerning the search for and production of documents responsive to 1100 West's pre-October 2008 document discovery requests to Red Spot.

> 4.   Information and communications concerning BME's review of the EPA [f]ile.

> 5.   Communications concerning the sum and substance of documents within the EPA [f]ile, to wit:

> > a.   the presence of TCE and/or PCE in Red Spot processes or waste streams as depicted in documents within the EPA [f]ile;

> > b.   leaks and releases of hazardous wastes into the environment as depicted in documents within the EPA [f]ile;

> > c.   history of alleged violations of environmental regulations as depicted in documents within the EPA [f]ile.

> 6.   Communications within BME or within Red Spot (or between the two) regarding production or non-production of all or any portion of any document found within the EPA [f]ile to 1100 West.

> 7.   Communications concerning representations made by BME to the Court at the October 15 and 17, 2008, hearings, relating to the sum and substance of documents within the EPA [f]ile.

Pl.'s Reply, at 17-18.

Red Spot and BME contend that there has been no waiver of attorney-client or work-product privileges under the crime-fraud exception. However, Red Spot has agreed to waive the attorney-client and work-product privileges with respect the circumstances of

BME's review and non-production of the EPA file.  Red Spot Resp. at 1.  Specifically, Red Spot has agreed to a limited waiver that would include the following information:

- Information and communications concerning BME's review of the EPA [f]ile;

- Communications with [sic] BME or within Red Spot (or between the two) regarding production or non-production of all or any portion of any document found within the EPA file to 1100 West; and

- Communications concerning representations made by BME to the Court at the October 15 and 17 hearings.

*Id.* at 2.

BME has stated that, as counsel of record for Red Spot, it will defer to Red Spot's decision on whether or not and to what extent to waive the attorney-client and work-product privileges.  BME Resp. at 5.  Further, BME, like Red Spot, argues that Red Spot has not waived the privileges because of any application of a crime/fraud exception, application of any ethical misconduct exception, or because BME attorneys disclosed information during the two October 2008 hearings.  *Id.* at 6-8.  In conjunction with that argument, BME asserts that it does not concede that a factual basis exists for 1100 West's position on application of the crime/fraud exception to the attorney-client and work-product privileges, in part because BME's counsel has not had the opportunity to review the contents of the Newly Discovered Responsive Documents.  *Id.* at 7 n.6.  Moreover, BME argues that any waiver of the work-product privilege should not extend to its attorney's mental impressions and opinions.  *Id.* at 5-6.  But, BME has "reserve[d] the right to disclose privileged information, if necessary, consistent with Rule 1.6(b) of the Indiana Rules of Professional Conduct (as adopted by the S.D. Ind. L.R. 83.5(g) and by Rule V(B) of the Rules of Disciplinary

Enforcement for the United States District Court for the Southern District of Indiana)." *Id.* at 5 n.5.

The Court concludes that with respect to the EPA file and the documents contained therein, Red Spot has agreed to waive the relevant privileges. Moreover, BME has waived the work-product privilege with respect to the EPA file other than for an attorney's mental impressions or opinions. In light of the knowing waiver, the Court will not address application of any exceptions to the attorney-client or work-product privileges with respect to non-disclosure of the EPA file and its contents.

1100 West has asked for a broader waiver of the attorney-client and work-product privileges, however, in light of Susan Henry's ("Henry's") responses on behalf of Red Spot during the Rule 30(b)(6) deposition, and in light of the documents uncovered through 1100 West's Rule 34 discovery in December 2008. As a result of this request, and Red Spot's and BME's responses, the Court must address whether there has been a waiver of the attorney-client and/or work-product privileges with respect to the Newly Discovered Responsive Documents.

Generally, "the attorney-client privilege is waived when the client uses the attorney-client relationship to engage in ongoing fraud . . . ." *In re Special Sept. 1978 Grand Jury (II)*, 640 F.2d 49, 59 (7th Cir. 1980) (citing, *inter alia*, *Clark v. United States*, 289 U.S. 1, 59 (1933)). *See also United States v. BDO Seidman, LLP*, 492 F.3d 806, 818 (7th Cir. 2007), *cert. denied sub nom. Cuillo v. United States*, 128 S.Ct. 1471 (2008). The party seeking waiver of the privilege must provide evidence that gives ""'colour to the charge (of fraud)"; there must be "prima facie evidence that it has some foundation in fact.""" *In re Special*

*Sept. 1978 Grand Jury (II)*, 640 F.2d at 60-61 (quoting *Clark*, 289 U.S. at 15 (other citations omitted)).  *See also United States v. BDO Seidman, LLP*, 492 F.3d 806, 818 (7th Cir. 2007) (quoting the same language from *Clark*).  According to the Seventh Circuit,  "[its] case law does not require a party seeking to invoke the crime-fraud exception to allege a particular offense or to make a prima facie showing with respect to each element of common law fraud."  *BDO Seidman, LLP*, 492 F.3d at 820.

Here, 1100 West claims that the circumstances surrounding the non-disclosure of the EPA file, together with continued assertions by Red Spot in pleadings with the Court that Red Spot never used, stored and/or disposed of TCE or PCE on its property; Henry's Rule 30(b)(6) deposition testimony in which she denies on Red Spot's behalf the use, storage and/or disposal of TCE or PCE and in which she asserts that she has looked at all relevant documents; and the existence in the EPA file documents and the Newly Discovered Responsive Documents of multiple references to either the use, storage and/or disposal of TCE or PCE; gives "colour to the charge" that Red Spot deliberately withheld documents that show it used, stored, and/or disposed of TCE or PCE on its property.  As such, 1100 West claims that the exception to the attorney-client privilege should apply to the circumstances surrounding the non-disclosure of the Newly Discovered Responsive Documents.

The Court agrees with 1100 West that it has provided *prima facie* evidence that Red Spot purposefully concealed relevant documents during discovery and that the concealment goes beyond the documents contained in the EPA file.  There is no dispute that Red Spot has made statements in pleadings before this Court that there is no

evidence that its products or its wash up solvents contained TCE or PCE.[2]  *See* Docket No. 235, Br. in Support of Motion to Limit Expert Testimony of Vasiliki Keramida, Ph.D., at 7 (citing Ex. E, Henry Rule 30(b)(6) Dep. at 225, 235, 308); Docket No. 382, First Am. Proposed Findings of Fact and Concls. of Law, at 4; Docket No. 384, Amended Trial Brief, at 5; Docket No. 409, Resp. in Opp'n to 1100 West's Motion for Sanctions, at 18-19.  In support of at least one of these statements, Red Spot cites the statements of its Rule 30(b)(6) deponent.  Docket No. 235, at 7.

In addition, there is no dispute that Henry testified as follows:

Q      Going back to Topic 5, when you looked through the 20 to 25 boxes, did you consider all of the document requests that had been previously served on Red Spot?

A      I was thinking of everything, yes, that's been talked about, like I said, in preparation for trial.

Q      So you reviewed the document requests that had been served in this case?

A      Briefly, not in depth.

Q      And how comfortable are you that Red Spot has produced from those 20 to 25 boxes all documents that would be responsive to the requests that have been served on Red Spot?

A      I am extremely comfortable, extremely confident of that.

Pl.'s Ex. 8, Henry Rule 30(b)(6) Dep. at 210.  According to this testimony, Red Spot had approximately twenty-five boxes of relevant documents that Henry reviewed.  Henry also made inquiries of current and former employees of Red Spot who would have reason to

---

[2]The Court notes that Red Spot's position on this issue has been consistent despite evidence that reported the presence of TCE in the soil near an underground storage tank that was excavated on Red Spot's property.

know about the use, storage and/or disposal of TCE or PCE on Red Spot's property. *Id.* at 7. Yet, now that the EPA file and its contents has belied the truth of these statements, Red Spot has now produced sixty-eight boxes and two filing cabinets of responsive documents. Among those documents discovered were the EPA file documents that show the possible use, storage and/or disposal of TCE on Red Spot's property. Moreover, other of these documents evidence that TCE or PCE may have been used, stored and/or disposed of on Red Spot's property. The discrepancy between Henry's testimony about her document search and reality creates an unmistakable inference that Red Spot knew it had something to hide and took steps to hide it. The fact that BME obtained the EPA file, had an attorney review the file, withdrew certain documents for review by a senior attorney (which included some that referenced the possible presence of TCE on Red Spot's property), and never turned those documents over to 1100 West in discovery creates an inference that Red Spot's attorneys also knew Red Spot had something to hide and took steps to prevent its disclosure.

Moreover, Red Spot and its attorneys caused to be filed with the Court multiple documents in which they assert that there is no evidence that Red Spot had either TCE or PCE in its products or wash up solvents. In other words, Red Spot made repeated factual assertions that these chemicals were never found on its property in any quantity.[3] Taking into account all of these facts and circumstances, as it must, leads the Court to conclude

---

[3]The Court does not intend for its statements regarding the evidence of the presence of TCE or PCE on Red Spot's property to be a factual finding with respect to any substantive issue in this case. It must, however, conclude from the evidence presented, that Red Spot hid documents that contain references to the potential presence of TCE or PCE on Red Spot's property that were relevant to discovery requests and to issues in this case.

that Red Spot took steps to deceive 1100 West and the Court regarding its use, storage, and/or disposal of TCE and PCE, and used its attorneys to do so.  In other words, Red Spot has committed a fraud upon the Court.  As such, it has waived any attorney-client privilege with respect to the non-disclosure of the Newly Discovered Relevant Documents.

The Court must also decide if the facts support waiver of the work-product privilege with respect to the Newly Discovered Relevant Documents.  The work-product doctrine protects any document prepared in anticipation of litigation by or for the attorney.  *In re Special Sept. 1978 Grand Jury (II)*, 640 F.2d at 62.  The privilege afforded the documents belongs to both the client and the attorney.  *Id.*  With respect to waiver of the privilege by the client, the Seventh Circuit states:

> A client may generally invoke the work product doctrine because, like the attorney-client privilege, it protects [its] interests by preventing disclosure about [its] case. When the case being prepared involves the client's ongoing fraud, however, [there is] no reason to afford the client the benefit of this doctrine.  It is only the "rightful interests" of the client that the work product doctrine was designed to protect.

*Id.* at 63 (quoting *Hickman v. Taylor*, 329 U.S. 495, 510 (1947)).  Here, the Court has concluded that Red Spot has taken steps to deceive both 1100 West and the Court.  In other words, it has engaged in an ongoing fraud on the Court.  Therefore, Red Spot is not entitled to the protection afforded by the work-product doctrine with respect to the non-disclosure of the Newly Discovered Responsive Documents.

Turning to BME's assertion of the work-product doctrine to block discovery of its work performed in anticipation of litigation, the Court must balance "the policy in favor of insulating the attorney's work product for the sake of the attorney" with "the policy which favors disclosure where the client has used his attorney to engage in fraud."  *Id.* at 63.  The

Seventh Circuit has made this balance in favor of disclosure "[w]ith respect to all information furnished to the attorney, whether transmitted in written form or communicated orally and recorded verbatim or in summary form . . . because . . . the strong policy disfavoring client fraud requires that the client relinquish the benefit [it] would gain from the work product doctrine . . . ." *Id.* However, the balance favors non-disclosure with respect to "the attorney's mental impressions, conclusions, opinions, and legal theories" absent a showing of sufficient need. *Id.* At this juncture, the Court must conclude that BME has also waived the work-product privilege with respect to information furnished to it by Red Spot regarding the Newly Discovered Responsive Documents, prior to the Court's November 13, 2008, Order that required BME and Red Spot to obtain separate counsel, because otherwise Red Spot would stand to gain from its fraud. However, the Court cannot conclude on the facts presented here that this is the rare case where the attorney's mental impressions, conclusions, opinions and legal theories, are discoverable.

In summary, the Court concludes that (1) Red Spot has voluntarily waived the attorney-client and work-product privileges with respect to the EPA file documents; and (2) 1100 West has presented *prima facie* evidence that Red Spot has committed discovery fraud and has made misrepresentations to the Court in pleadings with respect to the Newly Discovered Responsive Documents that amounts to a fraud on the Court; therefore, the crime/fraud exception applies to waive Red Spot's attorney-client privilege and to waive both Red Spot's and BME's work-product privilege with respect to the failure to produce said Newly Discovered Responsive Documents. Therefore, to the extent that 1100 West sought a blanket ruling that the crime/fraud exception or attorney misconduct exception should apply to waive the attorney-client and work-product privileges, 1100 West's Motion

12

to Compel is **DENIED**; however, the Court **GRANTS** 1100 West's Motion to Compel as to the ultimate relief sought.

### III.  <u>CONCLUSION</u>

For the reasons stated herein, the Court **GRANTS in part and DENIES in part** plaintiff/counterdefendant's, 1100 West, LLC, Motion to Compel.  Defendant/Counter Plaintiff, Red Spot Paint & Varnish Co., Inc. ("Red Spot"), and its counsel, Bose McKinney & Evans LLP ("BME"), shall provide full and complete responses to deposition questions about the following subjects:

1.    Communications concerning the sum and substance of the Newly Discovered Responsive Documents, to wit:

   a.    the presence of TCE and/or PCE in Red Spot processes or waste streams as depicted in the Newly Discovered Responsive Documents;

   b.    leaks and releases of hazardous wastes into the environment as depicted in the Newly  Discovered Responsive Documents;

   c.    history of alleged violations of environmental regulations as depicted in the Newly Discovered Responsive Documents.

2.    Communications within BME or within Red Spot (or between the two) regarding production or non-production of all or any portion of the Newly Discovered Responsive Documents to 1100 West.

3.    Facts or communications within Red Spot or between Red Spot and BME concerning the search for and production of documents responsive to 1100 West's pre-October 2008 document discovery requests to Red Spot.

4.    Information and communications concerning BME's review of the EPA file.

5.      Communications concerning the sum and substance of documents within the EPA file, to wit:

        a.      the presence of TCE and/or PCE in Red Spot processes or waste streams as depicted in documents within the EPA file;

        b.      leaks and releases of hazardous wastes into the environment as depicted in documents within the EPA file;

        c.      history of alleged violations of environmental regulations as depicted in documents within the EPA file.

6.      Communications within BME or within Red Spot (or between the two) regarding production or non-production of all or any portion of any document found within the EPA file to 1100 West.

7.      Communications concerning representations made by BME to the Court at the October 15 and 17, 2008, hearings, relating to the sum and substance of documents within the EPA file.

IT IS SO ORDERED this 30th day of January, 2009.


                                    _____
                                      LARRY J. McKINNEY, JUDGE
                                      United States District Court
                                      Southern District of Indiana


Distribution attached.

14

Distributed to:

Adam  Arceneaux
ICE MILLER LLP
adam.arceneaux@icemiller.com

Thomas A. Barnard
TAFT STETTINIUS & HOLLISTER LLP
tbarnard@taftlaw.com

Lewis Daniel Beckwith
BAKER & DANIELS LLP
lew.beckwith@bakerd.com

Jayna Morse Cacioppo
TAFT STETTINIUS & HOLLISTER LLP
jcacioppo@taftlaw.com

Robert B. Clemens
BOSE MCKINNEY & EVANS, LLP
rclemens@boselaw.com

Amy L. Cueller
BOSE MCKINNEY & EVANS, LLP
acueller@boselaw.com

James D. Dasso
FOLEY & LARDNER LLP
jdasso@foley.com

George A. Gasper
ICE MILLER LLP
george.gasper@icemiller.com

Beth S. Gotthelf
BUTZEL LONG
gotthelf@butzel.com

James Patrick Hanlon
BAKER & DANIELS LLP
jphanlon@bakerd.com

Richard A. Kempf
TAFT STETTINIUS & HOLLISTER LLP
rkempf@taftlaw.com

Rodney L. Michael Jr.
TAFT STETTINIUS & HOLLISTER LLP
rmichael@taftlaw.com

Patrick Michael Miller
DREWRY SIMMONS VORNEHM, LLP
pmiller@drewrysimmons.com

Patrick David Murphy
BOVERI MURPHY RICE  LLP
pmurphy@bmrllp.com

Janet Halline Nelson
BOSE MCKINNEY & EVANS, LLP
jnelson@boselaw.com

Peter Jon Prettyman
TAFT STETTINIUS & HOLLISTER LLP
pprettyman@taftlaw.com

Charles P. Rice
BOVERI MURPHY RICE, LLP
crice@bmrllp.com

Michael D. Rogers
BOSE MCKINNEY & EVANS, LLP
mrogers@boselaw.com

Steven C. Shockley
TAFT STETTINIUS & HOLLISTER LLP
sshockley@taftlaw.com

David Joseph Tipton
TAFT STETTINIUS & HOLLISTER LLP
dtipton@sommerbarnard.com

Richard S. VanRheenen
BOSE MCKINNEY & EVANS, LLP
rvanrheenen@boselaw.com

Judy L. Woods
BOSE MCKINNEY & EVANS, LLP
jwoods@boselaw.com