UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| 1100 WEST, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| RED SPOT PAINT & VARNISH COMPANY, INC., | ) Case No.: 1:05-cv-1670-LJM-JMS |
| | ) |
| Defendant. | ) |
| | ) |

**COLUMBIA STREET PARTNERS, INC.'S BRIEF IN SUPPORT OF MOTION TO DISMISS AND IN OPPOSITION TO PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT AGREEMENT**

*I.     Columbia Street Is Not A Party To This Lawsuit*

Over a decade ago, this Court dismissed this action between Plaintiff 1100 West LLC ("1100 West") and Defendant Red Spot Paint & Varnish Company, Inc. ("Red Spot"), but retained jurisdiction "solely for the purpose of enforcement of the settlement agreement" (the "Settlement Agreement").[1]  Despite the narrow purpose for which the Court retained jurisdiction nearly eleven years ago, 1100 West now asks the Court to "reopen" the case for an entirely different purpose – so that 1100 West can conduct pre-litigation discovery on non-party Columbia Street Partners, Inc. ("Columbia Street") to determine whether 1100 West has grounds to assert a separate breach of contract action against Columbia Street.

---

[1] Specifically, as used herein, the term "Settlement Agreement" refers to the settlement agreement attached as Sealed Exhibit 1 to 1100 West's Motion to Enforce Settlement Agreement.

1

But non-party Columbia Street was not, and is not, a party to this case. Whatever continuing jurisdiction this Court may have retained over the parties to the lawsuit, it has no jurisdiction over the non-party Columbia Street to allow such discovery.

As the Seventh Circuit and other federal courts throughout the country have explained, even where a court reserves jurisdiction to enforce a settlement agreement, that reservation only entitles the court to adjudicate a dispute between the parties in the case at the time of the settlement; **it does not create new jurisdiction against new parties**. *See Abbott Laboratories v. CVS Pharmacy, Inc.*, 290 F.3d 854 (7th Cir. 2002) (where district court reserved jurisdiction to enforce settlement, Seventh Circuit held that district court could not exercise retained jurisdiction over non-parties to the action and ordered district court to dismiss non-parties for lack of subject-matter jurisdiction); *see also, e.g., David A. Bovino P.C. v. MacMillan*, No. 12–cv–00551–PAB–KMT, 2015 WL 3903086, at *3 (D. Colo. June 24, 2015) (denying motion to enforce and stating that "the authority to enforce settlement agreements does not ordinarily extend to agreements involving persons or entities not part of the pending proceeding."); *Boyles v. Visteon Corp.*, No. 05-CV-0513-CVE-SAJ, 2007 WL 1723491, at *2 (N.D. Okla. June 13, 2007) (denying motion to enforce settlement agreement and stating, "[w]hile plaintiff is correct that the Court has the power to enforce a settlement agreement in a case pending before it, that does not extend the Court's authority beyond the litigants actually before the Court."); *Private Capital Group, Inc. v. Dareus*, No. 2:13-CV-18 TS, 2016 WL 199636 (D. Utah Jan. 15, 2016) ("While the Court has the authority to enforce a settlement with respect to the litigants, there is nothing to suggest that the Court could enforce the agreement against the non-party Lenders.").

Perhaps because it understands the law on this issue is well-established, 1100 West attempts to obfuscate which entity is the focus of its requested discovery. Although 1100 West

tellingly does not provide the discovery it intends to conduct, 1100 West nevertheless informs the Court in its Motion that it seeks to "reopen discovery for the limited purpose of determining whether **the Defendant** has complied with the terms of the parties' Settlement Agreement." (Dkt. 700 at 1) (emphasis added). 1100 West then repeats this language at the outset of its Memorandum. (1100 West Mem. at 3) ("1100 West asks that this Court reopen this case to allow for limited discovery, with the sole purpose of determining whether **the Defendant** has complied with its obligations under the settlement agreement.") (emphasis added). Of course, the term "the Defendant" could only refer to Red Spot, as Red Spot was the only "defendant" named in this lawsuit.

However, later its Memorandum, 1100 West makes clear that the subject of its proposed discovery is actually non-party **Columbia Street**. 1100 West subsequently and repeatedly explains that its "request" is to conduct "discovery for limited purpose of determining whether **Remediation [Columbia Street]** complied with the terms of the Settlement Agreement." (*Id*. at 13) (emphasis added) *see also id*. at 11, 14, 15, 18.[2] However, as 1100 West presumably knows, this Court cannot exercise whatever jurisdiction it retained in this case to allow 1100 West to conduct discovery on a non-party. *See supra* at 2 (citing cases regarding the same). The Court's retained jurisdiction does not extend that far. For this threshold reason alone, 1100 West's Motion should be denied.

### II.    *The Court Did Not Retain Jurisdiction To Allow 1100 West To Conduct Discovery On Columbia Street*

Even if this Court did somehow have jurisdiction over non-party Columbia Street, the Court did not retain jurisdiction to allow 1100 West to conduct pre-litigation discovery on

---

[2] 1100 West also filed multiple email communications exchanged between counsel for 1100 West and counsel for Columbia Street from 2012 through 2021, further indicating that 1100 West's intent is to conduct discovery on Columbia Street. (*See* Dkt. 698-5 through Dkt. 698-10)

Columbia Street to determine whether 1100 West has grounds for a separate breach of contract action that 1100 West would need to assert against Columbia Street in state court.

As noted above, this Court retained ancillary jurisdiction over this case for a single limited purpose – "solely for the purpose of enforcement of the [Settlement Agreement]" – and not for anything else. (Dkt. 695)  In an effort to invoke the Court's retained jurisdiction, 1100 West mislabels its Motion as a "Motion to Enforce Settlement Agreement." (Dkt. 700)  However, there has never been any question concerning the enforceability of the Settlement Agreement, nor has Columbia Street ever attempted to repudiate or backout of the Settlement Agreement.  The enforceability or enforcement of the Settlement Agreement is not at issue, and 1100 West is not seeking to enforce anything through its Motion.  Rather, 1100 West's Motion should be labeled as a "Motion to Conduct Pre-Litigation Discovery on a Non-Party."  Indeed, the only relief 1100 West seeks through its Motion is the ability to conduct discovery on Columbia Street concerning Columbia Street's performance and completion of remediation work that occurred over the last decade.  And, by its own admission, 1100 West seeks to conduct this discovery solely for the purpose of determining whether Columbia Street breached the Settlement Agreement.  (1100 West Mem. at 16-17)  However, conducting discovery to determine whether a non-party has breached a Settlement Agreement is far different than an enforcement action. (Dkt. 695)  Moreover, neither the Federal Rules of Civil Procedure nor the Indiana Trial Rules would empower a court to order pre-litigation discovery under these circumstances.[3]  1100 West cannot simply put a different label

---

[3] Pre-litigation discovery is only available in very limited circumstances under both Federal Rules of Civil Procedure 27 and Indiana Trial Rule 27 (as explained below, any dispute between 1100 West and Columbia Street must be litigated in Indiana state courts since there would not be federal jurisdiction).  Those Rules only allow a deposition to be taken before an action to "perpetuate" testimony to prevent a failure or delay of justice. Fed. R. Civ. P. 27(a)(3); Ind. T.R. 27(A)(3).   The rules are "not a substitute for broad discovery, nor [are they] designed as a means of ascertaining facts for drafting a complaint."  *Amin v. United States Postal Serv.*, No. 06-C-102-X, 2006 WL 740933, at *1 (W.D. Wis. Mar. 17, 2006).  Rather, they are "intended to address an immediate need to preserve material evidence that otherwise might be permanently lost before the plaintiff is in a position to file his lawsuit."  *Id*.  Even then, the person seeking to perpetuate the testimony must file a detailed and verified petition with the relevant court

over a potential breach action or a pre-litigation discovery motion against a non-party and thereby make it a motion to enforce.  Notably, none of the cases 1100 West cites address this issue or permit discovery under such circumstances.[4]

The retained jurisdiction is clear, unambiguous and limited – "solely for the purpose of enforcement[.]"  (Dkt. 695)  The Court's use of the term "solely" necessarily means the Court intended for the scope of its retained jurisdiction to be limited only to enforce the Settlement Agreement, not for anything else, like a separate breach of contract action for damages.  The Court simply did not retain jurisdiction to hear any and all disputes relating to the Settlement Agreement.  Among other things, the Court was not retaining jurisdiction to preside over discovery that one party believes *may* support a potential separate breach of contract action against a non-party (especially because such pre-litigation discovery would not be permitted under the Federal Rules in any event).  In fact, the Court could not have possibly retained such jurisdiction since any contractual dispute between 1100 West and Columbia Street would lack diversity or federal question jurisdiction, meaning any such dispute must be heard in state court.[5]  1100 West's attempts at obfuscation attest to this.  Seeking discovery on Columbia Street to ascertain facts to

---

and the court must be satisfied "that perpetuating the testimony may prevent a failure or delay of justice" before it allows the pre-litigation discovery.  Fed. R. Civ. P. 27(a)(3); *see also* Ind. T.R. 27(A)(3).  Thus, the Court cannot order pre-litigation discovery as 1100 West requests.

[4] The cases 1100 West cites in its Memorandum are factually and legally distinguishable from this case.  For instance, in *Angel Learning Inc. v. Houghton Mifflin Harcourt Publ'g Co*. – the case 1100 West cites from this district – the issue came before the court upon a Joint Motion for Protective Order and a Motion to Compel Production of Documents and Compliance with Subpoena after the court issued an order expressly permitting discovery on a named party in the lawsuit.  No. 1:08–cv–1259–LJM–JMS, 2009 WL 1956391 (S.D. Ind. July 7, 2009).  Obviously, those circumstances are far different from the circumstances giving rise to 1100 West's Motion.  *See also Kelly v. Wengler*, 979 F.Supp.2d 1237 (D. Idaho 2013) (granting Motion for Discovery and allowing plaintiff to conduct discovery on named defendant after named defendant conceded that it had violated the terms of the settlement agreement which had been expressly incorporated by the court in its order for dismissal).

[5] Any dispute between 1100 West and Columbia Street regarding Columbia Street's compliance with the Settlement Agreement would necessarily be quite separate from the RCRA dispute that gave rise to this lawsuit between 1100 West and Red Spot.

draft a potential state law complaint against Columbia Street is far afield from "enforcement of the settlement agreement" and is not allowed under the Federal Rules. (Dkt. 695)

### III.     The Court's Ancillary Jurisdiction Is Not Eternal

Furthermore, even if the Court did have jurisdiction over Columbia Street, the Court's retention of jurisdiction would not entitle 1100 West to conduct the discovery it now seeks to conduct on Columbia Street over a decade later. A court does not automatically possess jurisdiction to enforce a settlement agreement merely because the court's dismissal of a suit was premised upon that agreement. *Kokkonen v. Guardian Life Insurance Co.*, 511 U.S. 375, 380–82 (1994). A court's judgment may explicitly reserve authority concerning a settlement agreement and the court may retain ancillary jurisdiction concerning the settlement. *Id.* at 381-82; *see also Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, No. 01 C 9389, 2013 WL 6224489, at *3 (N.D. Ill. Dec. 2, 2013). But even in that circumstance, the court's retained "jurisdiction is not eternal[.]" *Loeffel*, 2013 WL 6224489, at *3. Rather, the court may only retain ancillary jurisdiction for a limited time. *Id.* (quoting *White v. Adams*, No. 08-2801, 2009 WL 773877, *1 (7th Cir. Mar. 25, 2009)). Indeed, "there is no authority that states a court shall exercise jurisdiction indefinitely [ ]" and "no rule or statute confers such endless jurisdiction upon a federal court in a private dispute lacking substantial public interest." *Brass Smith, LLC v. RPI Indus., Inc.*, 827 F.Supp.2d 377, 382-83 (D.N.J. 2011); *see also McCall-Bey v. Franzen*, 777 F.2d 1178, 1187 (7th Cir. 1985) ("No statute confers such a jurisdiction and we hesitate to use so formless a concept as inherent power to give the federal courts an indefinite jurisdiction over disputes in which the federal interest may be nonexistent."). Courts cannot extend their jurisdiction indefinitely "over what would essentially be an inchoate contract dispute." *Brass Smith,* 827 F.Supp.2d at 383.

But that is precisely what 1100 West is asking this Court to do. 1100 West is asking the Court to exercise its ancillary jurisdiction over ten (10) years after the Court entered its Order on Joint Stipulation of Dismissal. Yet, nothing in the Court's Order indicates that it retained jurisdiction "solely for the purpose of enforcement" of the Settlement Agreement indefinitely. (Dkt. 695) Rather, the Court was limited to retaining ancillary jurisdiction only for a "time-limited" period. *Loeffel*, 2013 WL 6224489, at *3 (quoting *White,* 2009 WL 773877 at *1). Surely, the Court's ancillary jurisdiction expired long ago, as the Seventh Circuit has expressly disapproved of the use of the delayed type of ancillary jurisdiction 1100 West is asking this Court to engage in ten years after dismissing this case. *McCall-Bey*, 777 F.2d at 1187.

### IV.     1100 West's Proposed Discovered Is Irrelevant To The Enforcement Of The Settlement Agreement

Finally, even if this Court did have jurisdiction over non-party Columbia Street, and even if this Court had retained "inchoate" jurisdiction forever to allow 1100 West to conduct pre-litigation discovery relating to the performance or breach of the Settlement Agreement as against non-party Columbia Street, 1100 West has failed to prove such discovery is necessary here. It is clear, unambiguous, and uncontroverted that Columbia Street has completed the only remediation work required of it under the Settlement Agreement.

Throughout its Memorandum, 1100 West insists that it must conduct discovery because it believes that Columbia Street may have failed to complete the remediation work required by the Settlement Agreement. Specifically, 1100 West claims that it has "concerns" about whether Columbia Street has completed its remediation work because there are supposedly "rising levels" of contamination at or around the property in question. (1100 West Mem. at 13) But 1100 West misunderstands (or more likely, misrepresents) the remediation work Columbia Street was

7

required to accomplish under the Settlement Agreement relating to the "Existing Contamination."[6] The only remediation work the Settlement Agreement required Columbia Street to complete relating to the "Existing Contamination" is set forth in Section 5, titled "Remediation of Real Estate." (Ex. 1 at 15-16) In summary, Section 5 provides only the following:

1. Only Columbia Street – not Red Spot, not Charles Storms, and not anyone else – is required to complete the referenced remediation work relating to the "Existing Contamination," but only "to the extent of the Trust Amount[.]"

2. The required work – which is defined as the "Work" in the Settlement Agreement – consists of the investigations and remedial activities specified in the "John Conner Remedial Plan" (a reference to the final remedial plan Mr. Connor ultimately finalized in March 2015).

3. The Work must be overseen by Mr. Connor's firm, GSI Environmental, Inc., and Columbia Street must diligently pursue its completion.

4. The Work is "deemed complete" whenever Mr. Connor certifies in writing "that the Work is complete in accordance with the John Connor Remedial Plan[.]"

(Ex. 1 at 15-16)

Contrary to 1100 West's suggestions otherwise, the Settlement Agreement simply does not require that Columbia Street ensure that levels of contamination on the property do not exceed a certain level (notably, the TCE levels *have* been reduced by 90% or more, contrary to 1100 West's claim). (*Id.*) Rather, Columbia Street was required to complete the "Work" designed by Mr. Connor and set forth in the John Connor Remedial Plan. (*Id.*) When Mr. Connor certifies in

---

[6] There are essentially two types of contamination addressed in the Settlement Agreement: (1) the "Existing Contamination"; and (2) the "Aromatic Contamination." (Ex. 1 at 6-7.) Columbia Street was only responsible for conducting remediation activities relating to the "Existing Contamination," which generally includes TCE, PCE, and their degradation and by-productions in the soil and groundwater. (*Id.* at 7, 15-16) Red Spot was responsible for conducting remediation activities relating to the "Aromatic Contamination." (*Id.* at 6, 15-16) 1100 West apparently only seeks discovery relating to Columbia Street's remediation activities relating to the Existing Contamination. (*See* 1100 West Mem. at 16-17)

writing that the "Work" is complete, Columbia Street's remediation obligations end. Nothing more is required under the Settlement Agreement. 1100 West admits and well knows[7] that Mr. Connor has certified that the Work is complete. (Dkt. 698-15).[8] In fact, 1100 West attached Mr. Connor's written certification as an exhibit to its Motion. (*Id.*)

As a result, the supposedly "limited discovery" which 1100 West asks to conduct regarding "rising levels" of contamination simply does not concern anything related to any obligation of Columbia Street under Section 5 (or any other provision of the Settlement Agreement). The terms of Section 5 could not be clearer or more unambiguous. Even if 1100 West could conduct discovery relating to a potential breach of the Settlement Agreement by Columbia Street, the facts make it clear that there is no such breach and thus no reason to conduct any discovery.

## V.  *Conclusion*

1100 West cannot use this Court to conduct pre-litigation discovery on a non-party in connection with an issue that is wholly unrelated to the narrow purpose this Court retained jurisdiction over a decade ago. Its Motion should be denied.

---

[7] As required in Section 5, 1100 West has received over 40 quarterly reports as to the progress of the design of the Work and the progress of the Work. It also received an additional 40 reports as to expenditures from the "Trust," which 1100 West knows is now nearly exhausted.

[8] As the Certification clearly states: "[I]t is hereby certified by John A. Conner that the Work pursuant to the Remediation Work Plan issued 30 March 2015 has been completed." (Dkt. 698-15 at 2)

9

Respectfully submitted,

ICE MILLER LLP
*/s/ G. Daniel Kelley, Jr.*
G. Daniel Kelley, Jr. (5126-49)
Samuel Gardner (32825-29)
Ice Miller LLP
One American Square, Ste. 2900
Indianapolis, IN  46282-0200
Phone:  (317) 236-2100
Fax:  (317) 592-4681
Daniel.Kelley@icemiller.com
Samuel.Gardner@icemiller.com

*Counsel for Columbia Street Partners, Inc.*

## CERTIFICATE OF SERVICE

I certify that on March 11, 2021, I electronically filed the foregoing document using the Indiana EFiling System (IEFS), and the same was served upon all counsel of record via IEFS.

*/s/ G. Daniel Kelley, Jr.*
G. Daniel Kelley, Jr.